IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA          )
                                  )
v.                                ) Criminal Action No. 3:21CR17–HEH
                                  )
JOSHUA CLAYTON BRADY,             )
                                  )
         Defendant.               )

### MEMORANDUM OPINION
(Denying Defendant's Motion to Suppress)

THIS MATTER is presently before the Court on Defendant Joshua Brady's ("Defendant") Motion to Suppress. (ECF No. 50.) Defendant's challenge centers around a search warrant obtained and executed by the Chesterfield County Police Department ("CCPD"). Defendant contends that the search warrant was not supported by probable cause and the delay between the seizure of his electronic devices by CCPD, and the subsequent execution of a federal search warrant to search the contents of the devices, violated the Warrants Clause of the Fourth Amendment. (Mem. Supp. at 5–8, ECF No. 51.) Both Defendant and the United States have filed detailed memoranda supporting their respective positions. The Court received evidence and heard oral argument on December 8, 2021. Because the issues for resolution are fact dependent, a detailed recitation of the evidence is necessary.

### I. Background

On August 19, 2019, a young female, ME, reported to a Chesterfield County Police Officer that she was raped by JE, a 17-year-old male. (Search Warrant Aff. at 4,

ECF No. 51-2.) The investigation was assigned to Detective Joanna Harstook who conducted a video recorded interview with ME. During that interview, ME told Detective Hartsook that her aunt, Jami Tomlinson, dropped her off at a church near JE's house and that JE raped her in the woods by the church. ME also noted that Tomlinson picked her up from the church following the encounter. Detective Hartsook then questioned Tomlinson who confirmed ME's statements.

Before the conclusion of the interview, CCPD received a tip that ME was being paid by a man named Joshua Weston to file a false report. Detective Hartsook questioned ME and Tomlinson about the tip and both denied that the report was false. However, Tomlinson admitted that she had met Weston on Facebook and told him she needed money. After the initial Facebook contact with Weston, Tomlinson said she met him at several stores where he paid for things her family needed. She described Weston "as 19, a British subject, who is wealthy and attends Yale but has throat cancer so he . . . tries to help people out." (*Id.*)

Detective Hartsook subsequently discovered that "Joshua Weston" was an alias often utilized by Defendant, a 33-year-old male with a history of crafting fraud schemes. (*Id.*) Detective Hartsook obtained a Virginia Department of Motor Vehicles ("DMV") photo of Defendant from July 2019 and, while questioning JE about the rape accusation, asked JE if he knew the man in the DMV photo. JE indicated that it was Weston, his 17-year-old girlfriend's ex-boyfriend and described him as "having a British accent, being very wealthy, and having been upset that his girlfriend left him for [JE]." (*Id.*) Additionally, JE showed Detective Hartsook threatening messages that Weston had sent

2

him via Snapchat.

Following this discovery, on September 10, 2019, Detective Hartsook confronted ME and Tomlinson about the false report and stated she "knew that [Weston] had promised [ME] money to make a false rape report." (*Id.*) ME admitted that the report was false and showed Detective Hartsook screenshots of messages between her and Weston in which they planned the details of the false report. Additional screenshots, obtained pursuant to a search warrant for ME and Tomlinson's phones, confirmed that Weston promised to pay ME $20,000 to make the report and $30,000 if JE was convicted. (*Id.* at 5.) Although Weston claimed in the messages that he sent ME money transfers, ME never received the money.

After searching ME and Tomlinson's phones, Detective Hartsook investigated Defendant further. Through her inquiry, Detective Hartsook found a 911 call made by Defendant from the same number used to contact ME and Tomlinson. (Gov't's Sur-Reply at 4, ECF No. 61.) She also found that Defendant had contact with Virginia Commonwealth University police after a student reported him for stalking. (*Id.*)

On August 28, 2019, Detective Hartsook contacted Marie Smith, an Intelligence Analyst in Planning and Research with CCPD, to obtain more details on Defendant's contact information and current address. DMV records indicated Defendant lived at 19820 Oak River Drive. (DMV Rec. Email, ECF No. 60-4.) Smith also sent Detective Hartsook the parcel information for that address, which listed the owner as Timothy Harter. (Parcel Info., ECF No. 60-5.) At the hearing, Detective Hartsook testified that at the time she was investigating, she knew Harter to be Defendant's stepfather. She also

drove by the address and ran the plates on a car in the driveway, which came back as registered to Defendant's mother. Later, Detective Hartsook emailed Smith in an attempt to verify Defendant's address before obtaining a search warrant because he told people he lived in other locations. (Smith Email, ECF No. 60-6.) Detective Hartsook did not verify Defendant's address beyond the DMV records, Parcel Information, or vehicle registration, but also found no concrete evidence to substantiate the claims that Defendant lived in the other locations.

On September 12, 2019, Detective Hartsook obtained a warrant from a magistrate in Chesterfield County to search "the dwelling of 19820 Oak River Drive . . . [for] any and all electronic devices, including but not limited to: computers, cell phones, all electronic storage devices and the data contained therein." (Search Warrant Aff. at 1.) The magistrate, based on the information included in Detective Hartsook's affidavit, issued the warrant without asking Detective Hartsook any additional questions.

That same day, Detective Hartsook executed the search warrant. When she arrived at the target address, Defendant answered the door and confirmed that he resided there. Upon searching the house, Chesterfield County Police Officers seized three computers, including a black Asus laptop, computer accessories, a Yale lanyard, bank cards, and other identifying evidence. Because CCPD does not have a computer forensics lab, Detective Hartsook took the devices to a state police forensics lab where they sat in a queue waiting to be analyzed. Detective Hartsook testified at the hearing that she has handled many cases involving electronic evidence and believed there was a probability that evidence of Defendant's crime of witness bribery could be found on his

4

computers. Particularly, because Defendant utilized Facebook and Snapchat to communicate with others in relation to the crime, Detective Hartsook expected evidence to be on his computers.

Following the search, Defendant was arrested by CCPD for bribery of a witness and eventually released on bond. Prior to the preliminary hearing in the Chesterfield County Juvenile and Domestic Relations Court, Defendant's counsel, Russel Bowles, filed a motion to suppress any evidence seized pursuant to the search warrant. (State Mot., ECF No. 60-2.) Around December 2019, although no one can recall the exact date, the Special Prosecutor assigned to Defendant's case indicated to Bowles that she would not utilize any evidence found at the residence, thus, he did not act further on the motion to suppress.

Beginning in February 2019, and while Detective Hartsook's investigation was taking place, the Federal Bureau of Investigation (the "FBI") began investigating Defendant for coercion, enticement, sexual exploitation of children, and receipt and distribution of child pornography. (Fed. Warrant at 5, ECF No. 60-9.) FBI Agent Ford first sought and obtained a search warrant for Defendant's home on February 12, 2020. Agent Ford reached out to Detective Hartsook prior to obtaining the warrant, and she accompanied Agent Ford during the execution of the federal search warrant. Sometime at the end of May 2020, Agent Ford obtained the computers seized during the state search warrant from Detective Hartsook and put them in the FBI's control room in Northern Virginia. It was not until he obtained a subsequent search warrant in June 2020 that he conducted a forensic analysis on the computers for evidence of child exploitation.

Additionally, in March 2021, Agent Ford acquired another search warrant to search the content of the computers for evidence of wire fraud, bank fraud, and false statements. (Gov't's Sur-Reply at 11.)

## II. Discussion

Defendant first contends that the underlying affidavit for the state search warrant lacked probable cause. The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. amend. IV. Courts apply a "totality of the circumstances" analysis to determine if probable cause exists to support a search warrant. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When officers conduct a search and seizure pursuant to a warrant, the defendant has the burden of proving by a preponderance of the evidence that suppression is warranted. *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974); *Lego v. Twomey*, 404 U.S. 477, 488–89 (1972).

In reviewing the magistrate's probable cause determination, "great deference" must be accorded to the magistrate's assessment of the facts presented to him or her. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir.1990) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). As long as the magistrate "had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The task of the reviewing court is not to "conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record" to support the magistrate's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam). In reviewing a probable

6

cause determination, a court may consider only "the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

Defendant alleges that the search violated the Fourth Amendment because the affidavit did not contain sufficient information that would indicate that incriminating evidence would be located at the residence. (Mem. Supp. at 7.) Specifically, Defendant states that the evidence in the affidavit was only sufficient to justify a search of Defendant personally and his phone. (*Id.*) Thus, what seems to be at issue is where incriminating evidence of witness bribery could be found, and the relationship between the evidence sought (all electronic devices) and the place to be searched (the listed address). When reviewing an affidavit, a magistrate must find a fair probability that evidence of the crime will be found at the particular location to be searched. *Gates*, 462 U.S. at 238.

The search warrant at issue involved a search of 19820 Oak River Drive, for "any and all electronic devices, including but not limited to: computers, cell phones, all electronic storage devices, and the data contained therein." (Search Warrant Aff. at 1.) The affidavit included information that Defendant contacted Tomlinson through Facebook and text messages. The affidavit also indicated that Defendant sent JE, the falsely accused rape perpetrator, threatening messages through Snapchat. These applications are both accessed via electronic devices making it reasonable for a magistrate to make the inference that they could be accessed on Defendant's computer as well as his phone. Additionally, the affidavit included information that Defendant told

7

ME he had paid her for the false report using wire transfers. (*Id.* at 5.) A wire transfer could be completed on a computer or other electronic device other than Defendant's phone.

In fact, Detective Hartsook testified at the suppression hearing that, in her experience dealing with electronic evidence, there was a probability that this evidence could be accessed by, backed up to, or saved to a computer. While Detective Hartsook did not have direct evidence that Defendant accessed these applications on his computer, "probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence . . . ." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). A magistrate could find a substantial basis to conclude, based on the affidavit which describes the false report and bribery in detail, that evidence of the crime of bribery would be found on Defendant's electronic devices.

The Fourth Circuit has held that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (agreeing with the Fifth, Sixth, Eighth, and Ninth Circuits). Based on the *Anderson* analysis, it is a reasonable inference that a person's computer and electronic devices would be stored at their place of residence. While Detective Hartsook did not include the facts surrounding her investigation into Defendant's address in the affidavit, she provided the magistrate information indicating that she thoroughly investigated Defendant and his extensive criminal history.

Specifically, Detective Hartsook noted in the affidavit that she discovered "Joshua

8

Weston" was an alias used by Defendant, she then accessed Defendant's DMV records and photo, and she looked at his extensive criminal history. She then adequately described the house to be searched, demonstrating that she had been to the house and surveyed it. All of that would suggest to the magistrate a fair probability that the house to be searched was Defendant's residence, which consequently could contain evidence of the crime of bribing a witness. Accordingly, this Court finds there was substantial evidence in the record to support the magistrate's decision. *See Upton*, 466 U.S. 727.

Assuming *arguendo* that the warrant was facially invalid, the good faith exception, as outlined in *Leon*, still bars suppression. *United States v. Leon*, 468 U.S. 897 (908). Suppression of an invalid search warrant is appropriate, among other reasons, "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926; *Lalor*, 996 F.2d at 1584. Defendant claims that "Detective Hartsook was reckless in omitting several material facts known to her, and which would have been material to the magistrate." (Def.'s Reply at 9, ECF No. 60.)

When a defendant challenges an affidavit based on omitted facts, they must show those facts were omitted "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). Additionally, the omitted facts must be material to the probable cause determination, "such that its inclusion in the affidavit would defeat probable cause for arrest." *Id.*; *see also United States v. Cioni*, 649 F.3d 276, 286 (4th Cir. 2011).

9

Defendant asserts that evidence surrounding Detective Hartsook's inquiry into Defendant's address was recklessly omitted from the affidavit; specifically, that previous incident reports did not link Defendant to the named address or linked the address to a phone number other than Defendant's. Additionally, Defendant believes it was reckless that Detective Hartsook "neglected to advise the magistrate that the Residence was not titled in Brady's name, that she had not verified [Defendant's] occupation of the Residence by any independent source, and that none of her existing information placed [Defendant] in the [r]esidence." (Def.'s Reply at 10.) Finally, Defendant believes it was reckless for Detective Hartsook to omit the information she received about Defendant residing at other locations.

There is no evidence in the record that Detective Hartsook omitted these facts in an attempt to mislead the magistrate. *See Cioni*, 649 F.3d at 286 (finding defendant did not point to any specific evidence of recklessness). She had connected the address to Defendant through DMV records and past criminal records; the title holder of the property was known to be Defendant's stepfather; and Defendant's mother's car was in the driveway. Defendant also opened the door when officers arrived to execute the search warrant and identified himself. In fact, if this information was included in the affidavit, it likely would have strengthened probable cause.

Additionally, even if the evidence had been omitted recklessly, it would not have defeated probable cause. Evidence that Defendant called 911 from a Walmart store in one incident report and another incident report connected a different phone number to the residence would not defeat probable cause. Moreover, unsubstantiated claims by

10

Defendant, who regularly lied about his identity and other personal facts, would not defeat probable cause. Detective Hartsook was not attempting to mislead the magistrate by omitting this information and, even if the evidence was included in the affidavit, it would not have defeated probable cause to search Defendant's residence. Indeed, some of the omitted facts may have strengthened probable cause.

Next, Defendant relies heavily on *Pratt* and *Mitchell* to argue that the delay between the state seizure of the devices and their subsequent search by federal agents constituted a violation of the Warrants Clause. *See United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) (finding there were no overriding reasons for a delay and government was not diligent in obtaining a warrant); *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) (finding "detention of the hard drive for over three weeks before a warrant was sought constitutes significant interference . . ."). Both *Pratt* and *Mitchell* involved *warrantless* seizures followed by a delay in obtaining a warrant to search the seized items. *Pratt*, 915 F.3d at 273; *Mitchell*, 565 F.3d at 1351. In *Mitchell*, the Eleventh Circuit held that a seizure based on probable cause could become unconstitutional "if the police act with unreasonable delay in securing a warrant." 565 F.3d at 1351. This case, however, can be distinguished from *Pratt* and *Mitchell* because there was a valid search warrant at the time of the initial seizure. The state search warrant authorized not only seizure of all electronic devices, but also a search of their contents for evidence of the crime.

Even if *Pratt* and *Mitchell* extended to cases involving valid search warrants where there is a delay in the actual search, the delay here was justified. The Fourth

11

Circuit in *Pratt* provided guidance on how to determine if a delay violates the Fourth Amendment. "To determine if an extended seizure violates the Fourth Amendment, [the court must] balance the government's interest in the seizure against the individual's possessory interest in the object seized." *Pratt*, 915 F.3d at 271. Particularly, scarce police resources or other "overriding circumstances" could be a justification for delay. *Id.* at 272; *Mitchell*, 565 F.3d at 1353.

The CCPD did not have a lab capable of analyzing the contents of electronic devices. Detective Hartsook had to take the devices to the state police lab where there was already a backlog of evidence awaiting analysis. The queue, according to Detective Hartsook, is prioritized in order of importance and date of delivery, thus, anything dropped off before Defendant's devices likely took priority. As Detective Hartsook noted at the suppression hearing, the state police may prioritize certain items if the nature of the underlying crime warranted, but bribery of a witness does not present the same level of expediency as, say, a murder case. Therefore, the lack of forensic resources at CCPD, coupled with the length of the backlog at the state lab, constitutes overriding circumstances that would justify a delay between the seizure and resulting search.

Defendant also argues that, because the Special Prosecutor assigned to Defendant's case knew she was not going to use the evidence, any delay in returning it to Defendant after that decision violates the Warrants Clause. However, during the suppression hearing, neither Detective Hartsook nor the Special Prosecutor remembered when the prosecutor told Detective Hartsook that she would not need the devices. The Special Prosecutor believed it was sometime after the preliminary hearing on December

4, 2019, and Detective Hartsook believed it was early to mid-2020. Federal agents had obtained their own independent search warrant to seize Defendant's electronic devices by February 2020 and, shortly before they executed that warrant, they notified Detective Hartsook.

Similarly, the balance between the government's interest and Defendant's possessory interest in the devices here justifies delay. *Pratt*, 915 F.3d at 271. It is important to note the specific conditions associated with his bond post arrest pertaining to electronic devices. According to his mother's testimony at the suppression hearing, Defendant was not allowed to use a phone without her present and he was banned from using the internet. Consequently, Defendant's possessory interest in the electronic devices was diminished based on his bond restrictions.

Following execution of the federal warrant, Defendant's possessory interest in the laptop was further diminished, as the underlying investigation revealed violations of his bond restrictions, leading to the revocation of his bond and placement in custody. A Defendant's possessory interest in certain evidence, particularly electronic devices, is diminished when he is in custody. *United States v. Skinner*, No. 3:19cr19, 2021 WL 1725543, at *25 (E.D. Va. April 29, 2021) (finding, because Defendant could not have his phone while detained, his possessory interest was diminished compared to government's interest in the seizure). Therefore, when Defendant was arrested following the February 2020 search warrant, he did not have a colorable possessory interest in the computer. Any post-arrest delay in searching the computer was justified by its evidentiary value. This would include the delay between the federal agents acquiring the

13

computer from CCPD on May 27, 2020 and when they obtained the warrant to search its contents on June 17, 2020. Thus, no part of the delay in searching Defendant's electronic devices after they were seized violated the Warrants Clause of the Fourth Amendment.

### III. Conclusion

For the foregoing reasons, the Court finds that the evidence obtained pursuant to the CCPD search warrant was not illegally obtained and the delay between the seizure of that evidence and the subsequent search of its contents did not violate the Fourth Amendment. Accordingly, Defendant's Motion to Suppress will be denied.

An appropriate order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 23, 2021
Richmond, VA

14